[Scatcherd Lumber Co. v. Rike.]

# Scatcherd Lumber Co. *v.* Rike.

*Bill in Equity to Enforce a Maratime Lien Created by Statute.*

1. *Maratime lien; admiralty jurisdiction in Federal and State courts.* Where a maratime lien exists by reason of the maratime law, as distinguished from a contract lien or a lien given by State statute, the Federal courts have exclusive jurisdiction to enforce such lien, and no contract of the parties or State statutes declaring a lien in such cases, and providing a remedy for its enforcement, can oust the Federal courts of their exclusive jurisdiction, or create in the State courts a jurisdiction concurrent with the Federal courts.

2. *Same; same; constitutional law; lien for repairs in home port.* Where the Federal courts have not exclusive jurisdiction of such subjects, the legislature of the State can create liens for word and labor performed upon vessels and boats and provide for the enforcement of such lien; and Federal courts, having no jurisdiction to enforce liens for work and labor performed on a vessel while it is in the home port, a State statute, creating such lien and providing for its enforcement, is not obnoxious to the constitution of the United States, or the laws of Congress; and the courts of such State have jurisdiction of all claims embraced within the provisions of such statute.

3. *Same; same.*—The statute of this State, (Code of 1886, § 3054), creating a lien on vessels for work done or material supplied in building or repairing the same, enforceable in any court of competent jurisdiction, applies only to material or supplies furnished, or repairs and work and labor performed, while the vessel is in the home port; and does not, therefore, interfere with the constitutional maratime jurisdiction of the Federal courts.

4. *Same; bill to enforce lien; when not maintainable because of its failure to show that the work was done at the home port.*—The general rule is that the home port of a vessel is where the owner resides; and a bill filed in the chancery court in this State to enforce against a steamboat a lien given under the statute, (Code of 1886, § 3054), for work done and material furnished in repairing such boat, which alleges that such labor was performed and material furnished while the steamboat was at its home port, but avers that the owners were non-residents, and the evidence shows that the boat plied the waters of the Tennessee river, a navigable stream, towing barges to the alleged home port, where it was when the labor was performed and the materials furnished, it is not sufficiently shown by the facts of the case that the home port of the vessel was in this State, so as to authorize the State court to take jurisdiction of the cause.

[Scatcherd Lumber Co. v. Rike.]

APPEAL from the Chancery Court of Morgan.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee, Joseph N. Rike, against the appellants, the Scatcherd Lumber Company, a non-resident corporation, and Seward Cary, a resident citizen of Buffalo, New York. The purpose of the bill and the facts of the case are sufficiently stated in the opinion.

The respondents moved to dismiss the bill for the want of equity, and demurred to the bill upon the ground that the chancery court of the State had no jurisdiction of the cause, since the proceeding was *in rem* against a steamboat navigating a navigable river, which was within the admiralty and maratime jurisdiction of the United States. The demurrer and the motion to dismiss were each overruled.

Upon the submission of the cause upon the pleadings and proof, the chancellor decreed that the complainant was entitled to the relief prayed for, and ordered accordingly. From this decree the respondents appeal, and assign as error the decree overruling the demurrer and the motion to dismiss, and the rendition of the final decree granting the complainant relief.

SHELBY & PLEASANTS, for appellants.—The admiralty and maritime jurisdiction of the United States was first held by the Supreme Court of the United States to be limited to the sea-board, if not actually to the sea, and only on the rivers to where the tide ebbed and flowed, (The Thomas Jefferson, 10 Wheaton 428) ; but it is matter of public history and common knowledge in the legal profession that these decisions have been overruled, and that the admiralty and maritime jurisdiction of the United States is now extended over all the navigable waters of the country.—*The Lottawanna*, 21 Wall. 558. Exclusive original jurisdiction in admiralty is given to the various district courts of the United States.—Revised Statutes of United States, § 711 ; *The Hine v. Trevor*, 4 Wall. 555 ; *The Belfast*, 7 Wall. 624 ; *Warren v. Kelley*, 15 Atl. Rep. 49.

2. The lien which the complainant in the case at bar seeks to enforce, if it exists at all, exists by virtue of the provisions of section 3054 of the Code of Alabama. In the case of The Lottawanna, *supra*, the court said : "It

[Scatcherd Lumber Co. v. Rike.]

seems to be settled in our jurisprudence that so long as Congress does not interpose to regulate the subject, the rights of material men, furnishing necessaries to a vessel in her home port, may be regulated in each State by State legislation. State laws, it is true, can not exclude the contract for furnishing such necessaries from the domain of admiralty jurisdiction, for it is a maratime contract, and they can not alter the limits of that jurisdiction. But the district courts of the United States, having jurisdiction of the contract as a maratime one, may enforce liens given for its security, even when created by the State laws."—*Endner v. Greco*, 5 Fed. Rep. 411; *The Hine v. Trevor, supra.*

3. The bill in this case alleges that both defendants are non-residents. It prays for seizure of the boat and sale for the satisfaction of an alleged lien. No personal judgment could have been rendered against defendants without service or an appearance, which would have been binding upon them, and the bill is, therefore, a proceeding *in rem* against the boat.—*The J. W. French*, 13 Fed. Rep. 916; *Pennoyer v. Neff*, 95 U. S. 714.

4. If the statute of Alabama be regarded as giving complainant the lien he claims, and the services and repairs be regarded as having been performed and furnished in the home port of the vessel, as seems to have been supposed by counsel for complainant in the court below, the foregoing authorities show that the State court was without jurisdiction to render the decree which it did. But the bill alleges that the defendant, The Scatcherd Lumber Company, is a non-resident corporation, and the defendant Seward Cary is a citizen of the State of New York, and there is nothing in any pleading in the case or in the proof to the contrary; and it is the law as has been often decided that the place of residence of the owners is to be considered the home port, even when the registration is in another State.—*The Jennie B. Gilkey*, 19 Fed. Rep. 127. The residence of the owner is held to be the home port although the vessel is enrolled in a foreign port and sails under a foreign flag. *The Brig E. A. Barnard*, 2 Fed. Rep. 712; *The Mary Chilton*, 4 Fed. Rep. 847; *The Lotus No. 2*, 26 Fed. Rep. 637.

5. Looking at the case from the standpoint of the complainant—as if the labor and repairs were furnished

in the home port of the vessel—there is no evidence in the record and no allegation in the pleadings that the repairs and labor were performed on the faith of the lien, and in such case the presumption is that they were performed on the personal credit of the owner of the boat, and in such condition of the proof it was error to decree a lien on the boat.—*Gulf City C. & W. Co. v. The George Dumois*, 66 Fed. Rep. 353, and numerous cases there cited.

S. P. RATHER, *contra*.—It is conceded that a proceeding *in rem* against a steamboat under a maritime contract or a maritime tort can only be had in the district court of the United States; but it must be a maratime contract or a maritime tort before any jurisdiction attaches in such court. The Supreme Court of the United States, in the case *The Belfast*, 7 Wall. 624, which was carried there by writ of error from this court, says, after deciding that proceedings *in rem* under a maritime contract can only be enforced in the district courts of the United States, that "such a lien does not arise from a contract for materials and supplies furnished to a vessel in her home port, and in respect to such contracts it is competent for the States, under the decisions of this court, to create such liens as their legislatures may deem just and expedient, not amounting to a regulation of commerce, and to enact reasonable rules and regulations prescribing the mode of their enforcement."—*The Gen'l Smith*, 4 Wheat. 443; *The St. Lawrence*, 1 Black, 529. The jurisdiction of courts of admiralty is limited, in matters of contract, to those, and to those only, which are maratime.—*Grant v. Poillon*, 20 How. 162; *The Orleans v. Phœbus*, 11 Peters, 175.

COLEMAN, J.—Section 3054 of the Code of 1886 reads as follows: "A lien is hereby created on any ship, steamboat, or other water craft, whether registered, enrolled, or licensed, or not, that may be built, repaired, fitted, furnished, supplied, or victualed, within this State, for work done, or materials supplied by any person within this State, in or about the building, repairing, fitting, furnishing, supplying, or victualing such ship, steamboat, or other water-craft, and for the wages of the masters, laborers, stevedores and ship-keepers of such ship,

[Scatcherd Lumber Co. v. Rike.]

steamboat, or other water-craft, in preference to other liens thereon for debts contracted by, or owing from the owners thereof; and such lien may be asserted in any court of competent jurisdiction."

The appellee, Rike, filed the present bill against the appellant, and prayed for the enforcement of the lien given by the foregoing section of the Code upon the steamboat "William Towle." The bill prayed for a writ of seizure of the boat, but it does not appear that any orders or proceedings were taken to seize the boat. The respondent, the Lumber Company, and Seward Cary, answered the bill of complaint, and filed separate demurrers. The chancery court granted relief to the complainant, and decreed in default of payment, a sale of the boat.

The principal question raised by the assignment of errors is one of the jurisdiction of the chancery court. The steamboat had been engaged in towing barges on the Tennessee river, which were loaded with logs, to the city of Decatur, situated in Morgan county, Ala. The steamboat became badly out of repair, so much so, that it was unfit for further service. In this condition it was brought to Decatur, and there the materials were furnished for repairs and services rendered which is the foundation of the bill of complaint. The bill avers, and it is not controverted, that complainant was employed by the general manager and agent of the Scatcherd Lumber Company, and his authority is not questioned. It is also shown that there was no definite price agreed upon, either for materials or for services performed. A part of these services consisted in the performance of the duties of "watchman." The precise duties of a watchman are not averred in the bill, nor shown by the evidence. The general principles by which the jurisdiction of the Federal and State courts over questions of maratime character are determined, have been frequently declared, but difficulties in applying these principles to particular cases are continually presented, and the several courts have not been harmonious in applying admitted principles. At one time the jurisdiction of the Federal courts as to rivers was limited by the ebb and flow of the tide, but now it extends over all rivers navigable and navigated in the interest of commerce. In all cases where jurisdiction is conferred by the constitu-

[Scatcherd Lumber Co. v. Rike.]

tion of the United States and laws of Congress, the jurisdiction is exclusive, except that when the right may be enforced by the common law remedy the party aggrieved may proceed with this remedy in any court having common law jurisdiction. Where a maratime lien exists by reason of the maratime law, as distinguished from a contract lien or lien given by State statute, the Federal courts have exclusive jurisdiction, and no contract of the parties nor State statute declaring a lien in such cases, and providing a remedy, can oust the Federal courts of their exclusive jurisdiction. The effect of the decisions of the Supreme Court of the United States, construing the constitutional provision and laws of Congress, is, that where a maratime lien exists by virtue of maratime law, it is not in the power of States to create a jurisdiction concurrent with the Federal courts.— *Belfast et al. v. Boon et al.*, 7 Wall. 624; 1 Amer. & Eng. Encyc. of Law, pp. 194-98. We regard it equally well settled, and justly settled, that in all cases where the Federal courts have not exclusive jurisdiction, it is competent for the States to legislate relative to shipping contracts and torts, create liens upon vessels, boats, and instruments of water conveyances, even upon rivers navigable, and provide for the enforcement of such liens. We are of opinion, that whenever a lien created by statute of a State is valid, it is competent for the same power to provide for its enforcement. It would seem illogical to concede the right of the State to create the lien, and deny it all power to provide a remedy.—Authorities *supra*; *Gindele v. Corrigan*, 129 Ill. 582, (16 Am. St. Rep. 292) ; *Raymond v. Voorhies*, 39 La. Ann. 499, (4 Am. St. Rep. 274) ; *Atlantic Works v. Glide*, 157 Mass. 525, (34 Am. St. Rep. 305).

If the complainant had pursued his common law remedy against the respondent and acquired a lien upon its interest in the boat by the levy of an attachment, we are of opinion, that under the provisions of the law of Congress, reserving to suitors this remedy, he might have prosecuted the suit to judgment and condemnation of the property levied upon. The purpose of the bill is to enforce the payment of a demand due from the defendant by an implied contract made with its agent, by enforcing the lien created by the State statute.—Code of 1886, § 3054, The proceeding is not strictly

[Scatcherd Lumber Co. v. Rike.]

*in rem* against the boat, as such liens are enforced in admiralty. The bill makes the Scatcherd Lumber Company the debtor and defendant, and seeks to enforce the lien created by statute upon its property for the security of the demand, instead of making the boat itself the defendant, as would be the case in admiralty, to enforce the admiralty lien. The result, that is, the condemnation and sale of the boat for the payment of the debt, in either case, is the same. The enforcement of the lien is a *quasi* proceeding *in rem*. If by the maratime law, there exists a lien upon the boat for complainant's demand, which might be enforced in the Federal courts by a direct proceeding *in rem*, the jurisdiction of the Federal court is exclusive. But if there exists no maratime lien in favor of the complainant, then the statute is not obnoxious to the constitution of the United States or law of Congress, and the State court has jurisdiction, if the complainant's claim is embraced within the provisions of the State statute. It is clear from the decisions, that for materials and supplies furnished and work and labor performed in the original construction of a vessel or boat there does not exist a maratime lien of which the Federal courts have jurisdiction, and it seems well settled that this rule applies for materials and supplies furnished and repairs made and work and labor performed upon a vessel or boat in the home port.—Authorities *supra*; 14 Am. & Eng. Encyc. of Law, 410-420; *Clyde v. Steam Transportation Co.,* 1 Law. Rep. Ann. p. 794; *Baizley v. The Odorilla, Ib.* 505.

The bill avers that plaintiff's demand arose from services rendered and repairs made while the boat was at its home port. If the lien created by section 3054, *supra,* is applicable only to the building of ships, boats, watercrafts, or to repairs made, materials and supplies furnished, or work done, while at the home port, we think the statute constitutional. When construed in connection with the history of its enactment, and the continued re-enactment of this section, we are of opinion that such was the intention of the legislature. See the Code of 1852, Title 2, Ch. 8; Code of 1867, Title 2, Ch. 8; the decision of the Supreme Court of the United States, case of *The Belfast,* 7 Wall. *supra,* in connection with Ch. 5, Title 2, Pt. 3 of the Code of 1886,

36

While the bill avers that plaintiff's demand arose while the boat was at its home port, it also shows, that the owner, The Scatcherd Lumber Company, is a non-resident, and that Cary, the co-respondent, is a non-resident. The evidence shows, that the boat plied the waters of the Tennessee River, a navigable stream, towing barges to Decatur, that it was at Decatur when the repairs were made and services rendered, that its owners are non-residents. We cannot conclude either from the averments of the bill, or from the evidence, that Decatur was the home port. The general rule is, that the home port is where the owners, or at least some part owner, has his home.

Under this view of the case, and the law as declared by us, there is but one conclusion, and that is, that complainant's case is not one provided for in section 3054 of the Code under which it was brought, and that the chancery court was without jurisdiction. The bill must be dismissed.

Reversed and rendered. .