# Shearer *v.* City National Bank of Birmingham.

### *Bill in Equity for Subrogation.*

1. *Purchaser at sale by receiver under order of court; rights as to property subsequently sold under order of different court.*—Where a decree for the sale of property, in possession of a receiver subject to the order of the court, provides that the fund from such sale shall be paid into the registry of the court wherein the suit in which the receiver was appointed is pending, and that all claims existing against said property so sold shall be transferred to, be upon, and adhere to the said fund, so that the purchaser at the sale shall get the property free

[Shearer v. City National Bank of Birmingham.]

from incumbrance and charge, such decree contemplates the administration and distribution of the proceeds from said sale among lien-holders in and by the court wherein it was rendered according to the rules of equity practice in such cases, and there is transferred to such proceeds only those liens whose existence and validity could be lawfully ascertained by said court, and the rights of no existing holder of a lien on the property sold, who was not a party to the cause wherein said decree of sale was rendered, are affected by said decree, except upon his voluntary acceptance of the substituted security, to be manifested by propounding his claim in said court; and the purchaser at said sale, buying with constructive knowledge of the extent of protection afforded him by said decree, will be protected against all existing liens which may be properly presented and which the court had power to take cognizance of; and for the effectuation and enforcement of the rights of such purchaser the court rendering the decree will lend all its powers.

2. *Same; same; right of subrogation.*—Where, after the purchaser at said sale has paid into the court the purchase money and is put into possession of the property, the holders of certain claims, existing as liens upon said property at the time of the rendition of said decree of sale prior in right to all other liens, institute proceedings in another court of competent jurisdiction to enforce their liens, and under such proceedings the said property is seized while in possession of the purchaser at the receiver's sale and by decree sold and delivered to the purchaser thereof, the purchaser at the receiver's sale, upon showing that the demands of the prior lien-holders were of such character and in such condition as that the court wherein the receivership was pending could adjudicate them, and that the fund paid by him was still under the control of said court and no time had been prescribed and expired for the interposition of claims, is entitled to be subrogated to the lien of said prior lienholders and let in to be protected by an equitable application of the fund in court in his behalf, so that he should get the property free from incumbrance and charge as originally decreed; and for the effectuation of this right the said purchaser at the receiver's sale can intervene by petition in the court where the receivership is pending.

3. *Maratime lien; when admiralty jurisdiction in Federal court exclusively; right of one claiming equity under decree in admiralty to be protected by State court.*—Where a maratime lien exists by reason of the general maratime law, as distinguished from a contract lien or a lien given by State statute, the Federal courts have exclusive jurisdiction to enforce such lien; but where a libellant has established a lien upon a ship by a decree of a court of admiralty, in a libel proceeding *in rem* against a ship, a State court of equity, upon proof of such decree, becomes conclusively informed of the existence of such maratime lien, and has power to take cognizance of it; and where a party, who was in possession of said ship as purchaser at a sale ordered by a State court in equity, has been forced to discharge said maratime

lien by submitting to the sale and condemnation of the ship under the order of the admiralty court, and under the provisions of the order of sale by the State court, became invested with a right to be subrogated to the lien of the libellant, upon showing the alleged existence of the priority of the lien of said libellant, files his petition in the State court of equity wherein the sale at which he purchased was ordered, asking for the enforcement of the rights of subrogation and for protection, the record in the libel case establishes the existence of the alleged lien of which the State court of equity has power to take cognizance, and such petitioner, therefore, has the right to maintain his said petition.

4. *Same; conclusiveness of decree in admiralty of authority of receivers; res adjudicata; collateral attack.*—Decrees of a court of equity in proceedings of libel *in rem* against a ship, establishing the lien of certain libellants for services rendered to the ship while it was in the possession of receivers appointed by a State court in equity and subject to the control of said court, can not be collaterally attacked upon the ground that the libels did not in terms allege, and that it was not shown, that the receivers in possession were authorized by the court appointing them to contract for such services. The authority to make such contracts, which were the bases of the lien claimed, and whether they were binding obligations or not, being matters of issue in the libel suits in admiralty, the decree establishing such lien is conclusive of the validity of such contracts in all respects.

5. *Rights of purchaser at sale by receiver under order of court; subrogation to maratime lien; case at bar.*—On a bill filed to foreclose a mortgage on a ship, receivers of the ship were appointed, and under order of the court took the ship into their custody, subject to the control and further orders of the court. While thus in the custody of the receivers, the ship was ordered to be sold by them, and the decree of sale provided that the fund from such sale should be paid into the registry in court, and all liens and claims existing against such ship shall be transferred to, be upon and adhere to said fund, and that the purchaser at the sale shall get the ship free from incumbrance and charge. Under this decree the ship was sold by the receivers, and upon the payment of the purchase money the purchaser was placed in possession. Thereafter the ship was libelled in a court of admiralty for seamen's wages, master's wages and repairs and supplies furnished in the home port, the liability for all of which was incurred while the ship was in the custody of and being controlled by the receivers. Under the proceedings in admiralty the ship was seized while in the possession of the purchaser at the receivers' sale, and was sold under a decree in admiralty on such libels. The purchaser at the receivers' sale then filed his petition in the court wherein the receivership was pending, asking that the claims of the libellants be paid out of the proceeds of the sale by the receivers, and that he be subrogated to the liens of said libellants. At the time of the filing of such petition, the fund paid by the petitioner was still under the control of the

court and no time had been prescribed and expired for the interposition of claims against it. *Held:* That, because the liens for master's wages, supplies and repairs, which existed solely by State statute creating maritime liens (Code of 1886, § 3054), were within the jurisdiction of the court, the petitioner was entitled to subrogation as to such liens and to be let in to be protected by an equitable application in his behalf of the funds in court; and that though the lien for the seamen's wages, which was given by the general maritime law, was exclusively within the jurisdiction of admiralty, the decree in admiralty conclusively established the lien, and the petitioner was, therefore, entitled to like relief as to such lien.

APPEAL from the City Court of Birmingham, in Equity.

Heard before the Hon. W. W. WILKERSON.

The facts of the case are sufficiently stated in the opinion.

GREGORY L. & H. T. SMITH and SMITH & WEATHERLY, for appellant.—1. The court should not have sustained the demurrer and should not have dismissed the petition of the appellant. The first question is whether or not there were prior liens on this ship, which were entitled to precedence over the claim of the appellee, and over the rights of appellant, obtained by his purchase at the sale under the decree of the city court, as found by Judge Toulmin in the United States District Court of Mobile. The statutes of Alabama give a prior lien upon a ship for supplies furnished and for repairs. Code of 1886, § 3054. The lien of a material-man for supplies and repairs furnished in a home port given by a State statute is entitled to priorty over a mortgage on a vessel repaired, although such mortgage has been duly recorded before such supplies were furnished.—*The J. E. Rumbell*, 148 U. S. 2; *The Madrid*, 40 Fed. Rep. 677; *The Kearsarge*, 2 Curtis C. C. 421; *The Island City*, 1 Lowell, 375; *The William T. Graves*, 8 Ben. 578; 14 Blatchford, 189; *The Amos D. Carver*, 35 Fed. Rep. 665; *The Collier*, 2 Pittsburgh Rep. 304; *The Venture*, 26 Fed. Rep. 285; *The Raleigh*, 2 Hughes, 34; *Clyde v. Steam Trans. Co.*, 36 Fed. Rep. 501; *The Guiding Star*, 9 Fed. Rep. 521; 18 Fed. Rep. 263; *The Rapid Transit*, 11 Fed. Rep. 322; *The J. A. Travis*, 7 Chicago Legal News, 275; *The Menominie*, 36 Fed. Rep. 197; *The Wyoming*, 35 Fed. Rep. 548; *The Harrison*, 1 Sawyer 353.

2. In considering priority of liens, a statutory lien

for domestic supplies or repairs stands on the same foot-ing as liens that are strictly maritime liens.—*The Amos D. Carver*, 35 Fed. Rep. 665 ; *The Menominie*, 36 Fed. Rep. 197 ; *Clyde v. Steam Trans. Co.*, 36 Fed. Rep. 501 ; *The Madrid*, 40 Fed. Rep. 677.

3.  Common law remedies are not applicable to enforce a maritime lien by a proceeding *in rem*, and consequently the original jurisdiction to enforce such a lien by that mode of proceeding is exclusively in the district courts. Authority does not exist in the State courts to hear and determine a suit *in rem* to enforce a maritime lien.—*J. E. Rumbell*, 148 U. S. 2 ; *The Madrid*, 40 Fed. Rep. 677 ; *The Belfast*, 7 Wallace, 644 ; *The Moses Taylor*, 4 Wallace, 411 ; *The Hine v. Trevor*, 4 Wallace, 555 ; *Moran v. Sturges*, 154 U. S. 277.

4.  Liens granted by a State in favor of material men for furnishing necessaries to a vessel in her home port in said State are valid, though the contract to furnish them the same is a maritime contract, and can only be enforced by proceedings *in rem* in the district courts of the United States.—*The Lottawanna*, 21 Wallace, 559 ; *The Sylvan Stream*, 35 Fed. Rep. 314 ; *The Menominie*, 36 Fed. Rep. 197 ; *The J. E. Rumbell*, 148 U. S. 1 ; *The Belfast*, 7 Wallace, 644 ; *The Moses Taylor*, 4 Wallace, 411 ; *The Hine v. Trevor*, 4 Wallace, 555 ; *Portland Butch-ering Co. v. The Willipa*, 34 Pac. R. 689 ; *Warren v. Kelley*, 80 Me. 512 ; 15 Atl. Rep. 49 ; *Dever v. The Hope*, 42 Miss. 715 ; *In re Josephine*, 39 N. Y. 19.   Under these author-ities there can be no doubt but that the liens enforced in the Admiralty Court in Mobile were prior liens, and that that court was the only one that could enforce them.  So there was no help in that direction for the appellant. The city court of Birmingham could not force parties having a maritime lien to abandon the United States District Court and seek relief in the city court of Bir-mingham, a court that had no jurisdiction to enforce such liens.  The only thing it could do respecting such liens was to promise immunity to a purchaser who would buy under its decree, and in compliance with that promise protect the purchaser out of the funds derived from the sale.  This it seemingly promised by its decree.

W. C. WARD, *contra.*—This ship, when this bill was filed, was in the custody of a court of equity ; and, when

these libels were filed, without leave of the court, in the United States Court, in February, 1895, it was in the custody of the court. The receiver is but the hand of the court. It appears, from the petition of the appellant in the abstract, and from Exhibit A thereto attached, setting forth the several libels, that the libellants were the employés of the city court, and their demands were for services rendered the receivers. It cannot be controverted that parties dealing with the receiver cannot acquire a right in or a right to the property in the possession of the receiver. A lien by law can not attach to the property in the hands of a receiver.—Gluck & Becker on Receivers, p. 235, § 68 ; Dugger v. Collins, 69 Ala. 324. Property in the possession of a receiver is not liable to process of other courts.—20 Amer. & Eng. Encyc. of Law, 138 ; Noe v. Gibson, 7 Paige, 513.

The libellants, who seem to have taken possession of appellant's property, were employés of the receiver, and when they filed their libels were in contempt of court. Whatever the receiver owed them for services was a debt of the court, and it was their right and duty to apply to the State court to have their demands paid. They preferred to file their libels in the Admiralty Court, and wait until the ship passed from the control of the receiver before they seized it under their writs of seizure. Mobile, being the home port of the ship, their liens, if any, existed by virtue of the Code, § 3054, and were barred if suit was not commenced within six months after accrual of the claim.—Code of 1886, § 3095.

3. Merely filing the libels was not commencing the suit. This court has decided that suit was not commenced until the writ was delivered to the sheriff here. West v. Engel, 101 Ala. 509. O'Keefe's claim was already barred when he filed his libel. It results that, if appellant had defended, he could have protected his property. Thus is the case, even if by virtue of the statute any lien could be fixed upon the property in the hands of a receiver, which could not be done.—5 Thompson's Commentaries on Corporations, §§ 6940, 6941.

HEAD, J.—In a bill to foreclose a mortgage on the steamship Kanawha, filed by the Mercantile Trust and Deposit Company, against the ship's owner, the Mary Lee Coal and Railway Company, in the city court of

Birmingham, receivers of the ship were appointed, and they, accordingly, took her into their custody, as such receivers.

Pending said foreclosure bill, to-wit, on January 26, 1895, the present complainant, the City National Bank of Birmingham, claiming a lien by contract on the ship, prior in right to the mortgage lien, filed the present bill, in the same court, to enforce it, praying that the receivership in the foreclosure suit, be extended to this case, which was done by proper order, entered on February 25, 1895. Thereafter, to-wit, July 6, 1895, an order of sale of the ship was rendered by the court to be executed by the receivers. This order contained the following provision : "The fund derived from such sale shall be paid into the registry of this court, and all liens and claims now existing against said steamship shall be transferred to, and be upon, and adhere to the fund so brought into court, and the said steamship shall go to the purchaser free from encumbrance and charge." The ship was regularly sold by the receivers, August 30, 1895, in pursuance of said order, and George Shearer became the purchaser, at the price of $1,000. He paid the .purchase money and received possession. The order extending the receivership to this case, ordered the receivers to take the ship into their custody and control and hold the same subject to the further orders of the court and to report to the court, in this cause, "the present condition of the said steamship, Kanawha, and all the demands for which the said steamship, Kanawha, is liable." The particular terms of the original order appointing them do not appear.

On February 23 and 25, and July 2, 1895, three several parties claiming liens on said ship, respectively, for master's wages, seamen's wages and for supplies and repairs, filed libels *in rem*, against the ship, in the District Court of the United States for the Southern District of Alabama, to enforce their alleged liens, by condemnation and sale of the ship. Monitions were sued out therein, and delivered to the marshal, who held them, without action, until October 4, 1895, when he seized the ship under them, in the possession of Shearer, the purchaser at the said receiver's sale, and made return thereof to court. On October 7—three days after seizure—an order was rendered in these libel suits, "by

consent," (presumably of Shearer), that the ship be sold to save expense, and the proceeds to be paid into court to await definite decree; under which order, she was sold by the marshal, on the 15th of the same month, and the purchaser put into possession; and on the next day a decree was rendered distributing the proceeds among the libellants and others, ascertained to be entitled to the same. No defense was made to these suits, and decrees *pro confesso* were rendered against the ship. The allegations of the several libels show that the claims of the libellants accrued before the filing of the bill of the City National Bank, and while the vessel was lying in her home port in Mobile, Ala. Two of them show, by their allegations, that the claims were contracted by said receivers, and the other by the agent, manager or managing owner of the ship, or the master, by his agent. Shearer's petition avers that they were all contracted by the receivers.

Thereafter, on November 4, 1895, Shearer, being thus dispossessed of the ship, and the purchase money, paid by him, being still in the registry of the city court, intervened, by petition, in that court, setting up his dispossession and loss of the ship, and praying that the order of the court confirming said receiver's sale be set aside; that said sale be held for naught, and that the register be directed to pay back to petitioner the amount of said purchase money in his hands; or, if the same can be done, that the court require the receivers to use enough of said money to pay off the said debts which were allowed as liens by the district court, and obtain a conveyance to petitioner by the purchasers at the marshal's sale, so that the decree of the city court be complied with, and petitioner get said steamship free from all encumbrances and charges. There was also a prayer for general relief.

To this petition the City National Bank demurred, substantially, as follows :

1. That libellants did not submit their claims to the determination of this court, in this cause.

2. That the petition shows that libellants did not have maritime liens, within the meaning of the United States admiralty laws, for that the ship's home port was Mobile, Alabama.

3. And for that, it appears that the services were rendered in favor of the receivers of this court.

4.  The said claims were incurred by the receivers of this court, and this court alone had the right to hear and determine the same.

The city court sustained the demurrer, "because of the first ground therein assigned," expressing the opinion that, "the decree heretofore made in said cause directing the sale of the steamship, Kanawha, free from encumbrances and charges, as mentioned in said petition, refers to, and affects, only encumbrances and charges brought within the jurisdiction of this court, in said cause." The petitioner declined to amend, and now appeals from a final decree dismissing his petition.

There can be no doubt that the decree of the city court directing the sale of the ship, with the provision transferring all existing liens on the ship to the proceeds of the sale, contemplated administration and distribution of said proceeds among lien-holders, in and by that court itself, according to the methods of equity practice, in such cases; for, otherwise, it would be impracticable to make any disposition of the proceeds, with respect to the rights of existing lien-holders which were preserved by the decree of sale, after the said proceeds should be paid into the registry of the court, as directed. Hence, it was the duty of any lien-holder, desiring to waive his lien upon the ship and avail himself of the substituted lien upon the proceeds proposed by the decree of sale, to propound his claim, in that court, upon such notice, and within such time, as the court might prescribe.

It is, furthermore, we apprehend, not to be questioned, that the rights of no existing holder of a lien upon the ship, who was not a party to the cause wherein said decree of sale was rendered, were affected by said decree, except upon his voluntary acceptance of the proposed substituted security, to be manifested by propounding his claim, as aforesaid.

It is, again, a principle, we think, that it was, necessarily, contemplated by the said decree of sale, in the city court, that only those liens were transferred to said proceeds, whose existence and validity could, in view of the powers and jurisdiction of that court, be lawfully ascertained by said city court, for the plain reason that action by a court, without its power and jurisdiction, is a nullity, establishing nothing.

These conditions and principles were, by implication of law, apparent upon the face of the decree of sale, and the purchaser bought with constructive knowledge of the extent of protection which that decree afforded him.

The petitioner, as we have seen, prays relief only against the loss sustained, by the enforcement, against the ship, in proceedings *in rem*, in the court of admiralty, of liens alleged to have been in existence at the making of the decree of sale in the city court.

We observe that it nowhere appears upon the record, that, at the time of the filing of the petition, or since, any time had been prescribed by the city court, for propounding claims to the said proceeds of sale by lien-holders. The fund was still in court and no steps had been taken, so far as appears, to ascertain its rightful claimants. Its administration, by the court, was still *in fieri*; and the court was, therefore, open to let in the interposition of liens to absorb, or share in the distribution of, the fund. In reference to the claims, in question, of the said libellants, they, the libellants, made no claim to the fund, but retained and enforced their claims against the ship. The position of petitioner is, that these claims existed, as liens upon the ship, at the time of said decree of sale, prior in right to all other liens; and as he has been forced to discharge the same submitting to the condemnation and sale of the ship, in admiralty, where jurisdiction of the ascertainment and enforcement of such liens resided, and as the decree of sale protected him against all liens then existing, it is but equitable that he be subrogated to the liens of the libellants, and let in to be protected, by an equitable application of the fund in court, in his behalf.

Assuming that, when the petition was filed, the demand thereby asserted was of such character, and in such condition, as that the city court was invested with power to pass upon and ascertain the existence and dignity of the alleged liens of the libellants, at the time said decree of sale of said city court was made; and inasmuch as the fund was still under the control of the court, and no time had been prescribed and expired for the interposition of claims, we are of opinion that the petitioner was entitled to the proposed subrogation, upon showing, in a legal way, the alleged existence and priority of the liens of said libelants upon which the right

was based; and to intervene, as the equitable successor in interest of the libellants, and propound his right to such subrogation, for it cannot be doubted, that it was the purpose of the decree of sale of the city court to protect the purchaser against all existing liens which should be presented in time, and which the court had power to take cognizance of.

Then, the question is, whether the court, at the filing of the petition, had that power, under the particular facts averred in the petition; and whether such averments, which were admitted by the demurrer, show said existence and priority of said alleged liens.

As shown by the allegations of the libels, and by the petition in this cause, the contracts set up by the libellants were maritime contracts. For one of them—a small sum for seamen's wages—the maritime law gave a lien upon the ship. For the two others, no maritime lien existed—one being for master's wages and the other for supplies furnished and repairs made, in the vessel's home port; but, for these two, the statute of Alabama, (Code of 1886, § 3054), gave liens upon the ship "in preference to other liens thereon for debts contracted by, or owing from the owners thereof." The contracts being maritime, in their nature, whereby admiralty takes jurisdiction to enforce them, it is said in a number of decisions of the Supreme Court of the United States, that the court of admiralty draws to itself exclusive jurisdiction, when the proceeding is *in rem,* to establish and enforce against the ship, the liens given by the State statute, and not *in personam* to enforce the common law liability of the debtor.—*The Lottawanna,* 21 Wall. 558; *The J. E. Rumbell,* 148 U. S. 1, and authorities cited in these cases. See, also, 14 Am. & Eng. Encyc. of Law, 454, and cases there collected.

So that, if this doctrine (which we will presently show is opposed by a former adjudication of this court) were accepted as the law, in the condition the claims of the libellants were at the time the decree of sale of the city court was rendered, that court had no jurisdiction to determine whether liens in their favor existed or not.

But, still assuming the soundness of that doctrine, before the petitioner propounded his claim to subrogation by the filing of his said petition, as hereinbefore explained, the libellants established their liens upon the

ship, by decrees of the court of admiralty, in libels *in rem* against the ship; and it was in this *adjudicated* aspect that the petitioner brought them before the city court. The records of the libel cases established that the liens were in existence at and before the rendition of the decree of sale in the city court. Thus, the city court was made to be conclusively informed that the liens did so exist, not by any inquiry and judgment of its own, respecting their validity, but by the judgment of a court of competent jurisdiction, certified to it.

But, again, as we have just intimated, this question of the jurisdiction of State courts to enforce local statute liens upon the ship, for the security of contracts maritime in their nature, recently came under the consideration of this court in *Scatcherd Lumber Co. v. Rike*, 113 Ala. 555; and, supported by adjudications of other courts, we held, upon reasoning which seems to us unanswerable, that the jurisdiction to enforce such local State liens, in that class of maritime contracts, for which the general maritime law confers no lien upon the ship, is not exclusively in the District Court of the United States, but that the State courts of equity are invested with the jurisdiction also; that the jurisdiction of the district court is exclusive only when the contract which the lien secures, is of that class of maritime contracts for which liens are given by the general maritime law. The reasons for this conclusion are fully stated in the opinion, and it is unnecessary to reproduce them here.

Applying this rule to the present case, we find that two of the contracts of said libellants for the satisfaction of which the ship was sold in admiralty, to-wit, that for master's wages and that for repairs and supplies done and furnished in the home port, though maritime contracts, were not such as created liens under the maritime law, but the liens to secure them were derived alone from the State statute. Hence, the city court of Birmingham had jurisdiction from the beginning, if there had been no adjudication in admiralty, to ascertain and adjudge the existence and validity of such liens. As to the other contract, that for seaman's wages, the maritime law gave a lien, and the said adjudication in admiralty established its validity as well as the others.

We hold, in view of these considerations, that, while the city court was still in a position to dispense equity

to the petitioner, he came before the court, by his peti-
tion, and showed an equity entitled to be protected, in a
proper way; and that the demurrer to his petition ought
to have been overruled.

It is insisted by the appellees that the claims of the
libellants were invalid because they were contracted by
receivers who are not shown to have been authorized by
the court appointing them to make such contracts,
binding upon the ship or her owners.   It is obvious this
insistence cannot prevail, unless, for the reason men-
tioned, the decrees of the court of admiralty are void
upon the face of the records.   The proceedings were *in
rem* and the adjudications were, consequently, as bind-
ing upon the parties to the present proceeding, as if
they had intervened and made themselves parties to the
libels.   Such adjudications can not be collaterally as-
sailed, unless void on the face of the record.   The libel
for material and repairs to the ship alleges that she was
being operated by J. A. Montgomery and J. B. Scott,
receivers appointed by the city court of Birmingham, in
a cause therein pending, and run from time to time on
sea voyages, and, while being so operated and run,
stood in need of repairs to her boiler, in order to enable
her to prosecute her said voyages, and be operated suc-
cessfully as a good and sea-worthy steamship; that the
repairs made and the materials furnished (which are
specified) were done and furnished at the request of the
master and of the said receivers having control of the
said steamship, at the agreed price of $200.   The libel
for master's wages alleged that the ship was in the pos-
session of, and being operated by, said Montgomery and
Scott, receivers appointed by the city court of Birming-
ham, having full control of the vessel, operating as
owners of her, and libellant was employed by them, as
master of the ship at an agreed wage of $125 per month.
The libel for seamen's wages makes no allusion to re-
ceivers, but alleges that libellant was employed, as chief
engineer, by the "agent, manager or managing owner
of the steamer, or the master by his agent."

It is enough to say against a demurrer to the entire
petition, that at least one of the cases shows that it is
not amenable to the objection taken; but we think it
quite clear that neither of the decrees is void upon the
face of the record.   Whatever may be the presumption

[Shearer v. City National Bank of Birmingham.]

as to the authority of receivers in chancery to operate a steamship, found in their possession, and being operated by them upon the high seas, and which is alleged by the pleadings to have been in their full control, it is certainly true that they may have been so authorized. Whether the contracts set up, as the bases of the liens, were binding obligations or not, were matters of issue in the libel suits; and the decree establishing that they were such, is conclusive of their validity in all respects. If the receivers were not authorized by the court appointing them, nor by the general principles of maritime law, to make the contracts, the owner, or any other person interested, could have intervened in the libel proceedings, in some appropriate way, and protected himself against the relief sought against the vessel.

Suppose the parties now interested in the present proceeding, had been actual parties to the libels and had litigated libellants' rights to relief, resulting in final decrees against the ship, would it be maintained anywhere that the decrees were void, as against them, because the libels, though, confessedly, setting up the contracts as binding obligations, supporting liens, did not, in express words, allege that the receivers were authorized to make them? The allegations, according to good pleading, may have been too general, and subject to objection, for that cause, while the causes were progressing, but the final decrees can not be collaterally impeached on that account. The liens of the libellants, thus adjudicated, were prior, in right, to all other liens upon the ship which were not given by the general maritime law, or by the said section 3054 of the Code of Alabama, and the petitioner having been compelled to deliver up the ship, for their satisfaction, he should be protected, by the use of the fund in court, in such equitable way, as may appear proper to the court on the final hearing of the petition, if, upon issue upon the answer, his case be sustained.

A decree will be here rendered reversing the decree of the city court, overruling the demurrer to the petition, and remanding the cause.

Reversed, rendered and remanded.