## ALABAMA DRY DOCK & SHIPBUILDING CO. v. FOSTER et al.

Circuit Court of Appeals, Fifth Circuit.
March 26, 1929.

No. 5455.

Harry H. Smith, of Mobile, Ala. (Smiths, Young & Johnston, of Mobile, Ala., on the brief), for appellant.

Palmer Pillans, of Mobile, Ala. (Palmer Pillans, H. Pillans, Wm. Cowley, and Alexis T. Gresham, all of Mobile, Ala., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. Following the arrival of the schooner Else at Mobile on April 27, 1928, with a cargo of bitterwood taken aboard at Montego Bay, Jamaica, and while the cargo remained aboard, she was seized under a libel filed on April 30, 1928, by her master, the appellee A. S. Foster, and crew, asserting claims that the libelants were entitled to liens on the vessel and her pending freight for alleged amounts of wages owing to them. There was no appearance on behalf of the owners of the vessel, and a decree pro confesso was rendered against them. Under orders of the court the vessel was sold, and the proceeds, $1,200, were deposited in the registry of the court, and the cargo was unloaded and the freight money collected and deposited in the registry of the court.

The Mobile Towing & Wrecking Company intervened and claimed a lien on the funds deposited in the registry of the court for services in towing the vessel into the port of Mobile immediately prior to her seizure. The appellant, Alabama Dry Dock & Shipbuilding Company, also intervened and claimed a lien on the funds for labor and material supplied in dry-docking and repairing the vessel. A master found that the amounts due to the several libelants and interveners were the following: To the seamen,

$1,030.05; to the master, $800.10 (being the balance due for his wages at the rate of $175 per month to the date of his discharge, April 28, 1928); to the Mobile Towing & Wrecking Company, $244.20; and to the appellant, Alabama Dry Dock & Shipbuilding Company, $5,595.45. There was no dispute as to those amounts.

By agreement of the parties the amount found to be due to the seamen was decreed to be paid out of the proceeds of the sale of the vessel. The court adjudged that the master had a lien on the freight superior to all claims, except those of the seamen, and a lien under the statutes of Alabama on the proceeds of the sale of the ship of equal rank with the lien adjudged in favor of the Mobile Towing & Wrecking Company, and superior to the lien adjudged in favor of appellant on the proceeds of the sale of the ship; that the amount adjudged in favor of the master be paid from the net proceeds of the freight, $1,049.91, and that the balance remaining in the registry of the court, $174.40, be paid to the Mobile Towing & Wrecking Company.

█ A principal contention in behalf of the appellant is that the master is not entitled to a lien on either the freight or the ship. In 1828 a District Court decided that a master has a lien on the freight for his wages. Drinkwater v. Spartan, Fed. Cas. No. 4,085, 1 Ware, 145. That decision was followed by the same court in The Bowditch, Fed. Cas. No. 1,717, 3 Ware, 71, and by another District Court in The Arcturus, 17 F.(2d) 95. We think those decisions are not in harmony with decisions of the Supreme Court of the United States. In the case of The Steamboat Orleans v. Phoebus, 11 Pet. 175, 9 L. Ed. 677, that court decided that a master has no lien on the vessel for his wages. In the case of Norton, Assignee, v. Switzer, 93 U. S. 355, 23 L. Ed. 903, the decision was to the same effect, the court saying in the opinion: "Seamen have a maritime lien for their wages wherever the services may be rendered; but that just rule was never extended to the master, except in cases where the lien is created by statute."

That the quoted statement meant that the master has no maritime lien for his wages, and applied to the freight as well as the vessel, is persuasively indicated by the citations which followed the statement, as it is to be inferred that the court considered the decisions and texts cited to be in harmony with its statement. The first of those citations is the case of Smith v. Plummer, 1 B. & Ald. 575, in which it was decided that the master of a ship has not a lien on the

freight for his wages. Another of the citations was Maclachlan on Shipping, which contains a statement to the effect that, prior to the English statute on the subject, the master for his wages or disbursements was without lien, so that his only remedy was personal, either at law or in equity. Maclachlan Law of Merchant Shipping (6th Ed.) 155.

There was no decision on the subject in the case of The William M. Hoag, 168 U. S. 443, 18 S. Ct. 114, 42 L. Ed. 537. Nothing was decided in that case except that the District Court had jurisdiction, and that the case was not before the Supreme Court for a decision on the merits. But the statement in the opinion as to the questions raised in the case shows that the court recognized that, in the case of The Steamboat Orleans v. Phoebus, supra, it decided that the master has no lien for his wages. We think that, in the absence of a statute, under the maritime law, authoritatively recognized as in force in the United States, the master has no lien on the ship or the freight for his wages. Though the reasons which formerly influenced courts in concluding that a master has no maritime lien for his wages may have ceased to exist, we do not think it is for this court to give a lien, the existence of which has been denied by the Supreme Court of the United States, when it has had occasion to pass on the question.

█ The following is the Alabama statute under which a lien on the proceeds of the sale of the ship was adjudged in favor of the master: "Lien declared.—A lien is hereby declared on any ship, steamboat, or other water craft, whether registered, enrolled, or licensed, or not, that may be built, repaired, fitted, furnished, supplied, or victualed within this state, for work done, or materials supplied by any person within this state, in or about the building, repairing, fitting, furnishing, supplying, or victualing such ship, steamboat, or other water craft, and for the wages of the masters, laborers, stevedores, and shipkeepers of such ship, steamboat, or other water craft, in preference to other liens thereon for debts contracted by, or owing from, the owners thereof; and for wharfage and dockage; and such lien may be asserted in any court of competent jurisdiction." Code of Ala. 1923, § 8870.

That statute gives a lien on a ship to furnishers of labor, material, or supplies "in or about the building, repairing, fitting, furnishing, supplying or victualing such ship," "for the wages of the masters, laborers, stevedores, and shipkeepers of such ship," and for wharfage and dockage. As to the first-

mentioned beneficiaries explicit language of the statute makes the existence of the lien dependent upon the fact that the ship was "built, repaired, fitted, furnished, supplied, or victualed within this state." The statute gives no lien to one who builds, repairs, fits, furnishes, supplies or victuals a ship elsewhere than in the state of Alabama. The connection in which the words "such ship," etc., are used in the provision giving a lien "for the wages of the masters, laborers, stevedores, and shipkeepers of such ship," indicates that the reference was to a ship "built, repaired, fitted, furnished, supplied, or victualed within this state."

Members of each of the classes for whose wages a lien is given—masters, laborers, stevedores, and shipkeepers—ordinarily earn wages while the ship is detained in port. The provision as a whole discloses no purpose to give a lien for compensation for services rendered on the high seas or in foreign ports. Evidently the purpose of the enactment was to afford protection to those who within the state furnish labor or supplies to watercraft. The language of the provision giving masters a lien for their wages, and the connection in which that provision is found, indicate an intention to give the lien for such wages earned while the vessel is within the state of Alabama. We conclude that the statute does not purport to give a lien for wages of masters earned on the high seas or in foreign ports. It was not alleged or proved that the wages of the master for the amount for which a lien on the ship was adjudged were earned or accrued in the state of Alabama.

In behalf of the appellee it was contended that the decision in the case of Shearer v. City National Bank of Birmingham, 115 Ala. 352, 22 So. 151, had the effect of construing the statute as giving a lien for wages of masters earned outside of Alabama waters. We do not agree. It was decided in that case that decrees of the District Court of the United States adjudging liens on a ship for wages of the master and seamen, and for supplies and repairs, were rendered in cases within that court's jurisdiction, and were not subject to be collaterally attacked. The opinion in the cited case explicitly states that the allegations of the several libels show that the claims of the libelants accrued "while the vessel was lying in her home port in Mobile, Ala." The decision in that case did not give to the statute in question the effect of giving a lien on a vessel for a master's wages earned elsewhere than in the state of Alabama. The question whether a master does or does not have a lien on a ship for his wages earned on the high seas, or in other than Alabama waters, was not presented in that case.

For reasons above indicated, we conclude that the decree under review was erroneous. That decree is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.

FOSTER, Circuit Judge (dissenting). In my opinion the construction given the Alabama statute by the majority is too narrow. A statute giving the master of a ship a lien for his wages could have no other reasonable intention than to give him a lien for wages earned on board the vessel as master wherever she might be. The vessel was owned and registerd in Alabama and the proceeds are in the hands of a court in Alabama. The state statute should be given full effect. The Rupert City (D. C.) 213 F. 263; The Edith (D. C.) 217 F. 300; The Laurel (D. C.) 113 F. 373. For these reasons I respectfully dissent.